(35 Misc. Rep. 413.)

### REISERT v. CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County. July, 1901.)

1. INJURY TO LAND—LOWERING WATER LEVEL—DAMAGES.

In an action against a city for damages caused to agricultural lands by the lowering of their water level through the action of the pumping system of the city, the measure of damages is the difference between the value of the lands with and without their natural water.

2. SAME.

Where the lands are not commonly rentable, the rental value is not a proper measure of damages.

3. SAME—SPECIAL DAMAGES.
    Where a pumping system of a city has been in operation for many
    years, and has affected agricultural lands permanently, the owner can-
    not continue to work them, and attempt to make the city owning the
    pumping system liable for special damages to the extent of the labor,
    skill, and expenses of cultivation which he lost during the years of
    cultivation.

4. SAME—FRAUDULENT CLAIM.
    A claim of owner of agricultural lands worth $6,500 for damages to
    such lands by the use of a pumping system of the city to the amount of
    $75,000 is untenable, as fraudulent.

Action by Frederick Reisert against the city of New York. Judg-
ment for nominal damages.

James C. Van Siclen, for plaintiff.
R. Percy Chittenden, for defendant.

MAREAN, J. In the class of cases to which this belongs, the
true measure of damage is the difference between what the use
of the land is reasonably worth deprived of its natural water, and
what it would have been reasonably worth with such water. That
is the measure of general damage. See 3 Sedg. Dam. §§ 941, 942,
and cases cited. Special damage may in some cases be recover-
able. No rule can be laid down for special damage. Each case
depends on its own circumstances. If the subtraction of the water
is made without warning while a growing crop is on the way, the
value of the use of the land will not necessarily measure the loss.
If the crop be wholly destroyed, the owner not only loses the use
of his land for the year, but in addition his labor and expenses.
If it is not wholly destroyed, but only diminished, the value of
the land for the year disappears as an element of damage, and
the entire loss (which may be more or less than the value of the
use of the land) is best ascertained by inquiring how much less
the crop was worth when gathered than it would have been but
for the subtraction of the water. While the injury in these cases
is theoretically not permanent, but continuing, nevertheless, after
the system of pumping has been established, each agricultural year
opens with a practical certainty that the injury is to continue dur-
ing that year; and the landowner has no right to purposely incur
special damages, and expect the city to pay them. His general
damage for the year, he has a right to. The difference between
what the use of the land is worth for any purpose, and what it
would have been worth if not deprived of the water, he should
recover. But if he cultivates the land, and the returns which he
realizes are not sufficient to pay his labor and expenses, and in
addition the value of the use of the land, he owes his loss in that
respect to his own folly. If some trespasser builds a railroad across
my land, and I throw myself in front of his approaching train, I
cannot recover for my injuries. The injured owes even the wrong-
doer a duty to minimize the damage; and especially is that true
when the trespasser is pursuing a laudable purpose of purely public
good, and there is a grave question whether this action is a legal
wrong at all. It may be that the landowner in these cases has a

right to more than one year's experiment in the culture of his land without the water before he should be held to have wantonly incurred special damage; but that .question does not arise here, for something like ten years had elapsed in this case after the pumping commenced, prior to the first year for which the right to damages is not barred by limitation. The proof by which the re-coverable general damage may be established does not seem to be well understood. If such lands were commonly rented, the ordinary rentals would furnish a perfectly simple and reliable means of fixing the damage. But they are not. Of course, evidence of the extent of the actual subtraction of water is competent, and evidence also of what the land is capable of producing on one hand with the water, and on the other hand without the water. Such facts lay some foundation, more or less unsatisfactory, of course, for an opinion by experienced cultivators as to the annual value of its use; meaning by that what rent one actually desiring to rent could afford and would probably be willing to pay, not losing sight of what such lands could be bought for out and out. But this class of evidence should be limited to quantity and quality of products, and the other side of the account should be limited to quantity (as distinguished from cost) of labor, seed, and fertilizers required for the production. The actual history in any respect of any particular year, either before the water was taken or since, should not be allowed to be probed, on the question of general damage, because not only is an issue thus presented in which the defendant is utterly at the mercy of the unscrupulous plaintiff, but the issue is wholly irrelevant; for, whatever annual return the figures may show, a large part of it must be deemed the fruits of the proprietor's labor and skill, and not of the land, and the value of the use of the land is not arrived at, but only the value of the use of the land in combination with the proprietor's skill and attention, which last is an uncertain and undeterminable factor.

The value of the land in question for the purposes of sale and purchase with the water on one hand, and permanently deprived of it on the other, is the safest and most reliable basis for a con clusion as to general damage. Such value will not in any case be difficult of proof that it keeps in view and takes account of all possible uses to which the land might be applied, instead of being confined to the single, particular use which the owner had been accustomed to make of it. There is not a foot of agricultural land on Long Island, whether enjoying its normal water or deprived of it, the annual use of which is worth more than 5 per cent. or less than 3 per cent. of its sale value, in addition to taxes. All in excess of 5 per cent. and taxes which it may be made to produce is the fruit of the proprietor's labor and skill. It is matter of common knowledge that money can always be invested without risk so as to return 3 per cent. net. However agricultural land on Long Island may be deprived of water, if it has nevertheless a sale value, its use is worth for some purpose 3 per cent., at least, of that sale value, besides taxes, because the purchaser, for the use of it each year, foregoes at least 3 per cent. interest on his purchase money, and

pays the taxes. It is another matter of common knowledge that money cannot be invested in real estate as near the city of New York as any part of Long Island, or in any other entirely safe investment near home, so as to produce, one year with another, without the proprietor's personal attention, more than 5 per cent. and taxes. Any land on Long Island which with reasonable certainty will produce that return will find a ready and eager purchaser. Capital in New York has a keen scent for a near-by 5 per cent. investment. If any property on Long Island could, without the personal attention of the owner, with reasonable certainty, be made to yield more than 5 per cent. per annum on its sale value, it would soon be so sought after that its sale value would be enhanced to a point where the net return would be no more than 5 per cent. Given then in any case the sale value of agricultural land on Long Island, the value of its annual use is somewhere within the range of from 3 to 5 per cent. of that value, plus taxes. All else that it may in fact be made to produce must be regarded, not as the fruits of the land, but of the personal efforts and skill of the proprietor. The truth is that the annual use of no form of income-producing property, free from substantial risk, is in these days and in this part of the world, and without the personal attention of its proprietor, worth more than 5 nor less than 3 per cent. of its value. If it falls below 3 per cent., the disposition to sell will be in excess of the disposition to buy, and prices will fall until a return of something more than 3 per cent. is reached. If it rises above 5 per cent., the contrary happens, resulting in a return to 5 per cent. or something less. Any farmer who recovers against the city in cases of this class upon a basis of annual value in excess of 5 per cent. of sale value will have accomplished a manifest fraud. In this case the plaintiff paid $6,500 for his farm. There is no reason to believe it has since increased in value, and the plaintiff gave no evidence that its sale value has decreased. Three hundred and twenty-five dollars and taxes is the uttermost limit of its annual value before the water was taken, and there is no evidence to warrant a conclusion that its use since then for some purpose has not been that sum. The plaintiff's farm was worth only $6,500, yet he comes into court seriously claiming damage to the amount of $75,-000, as if any legitimate damage could exceed that which would have resulted from a complete destruction of the land. It is impossible to contemplate such a claim without that instinctive hostility which every attempt to deceive the court, and by its aid work out a fraud, deserves.

I have not deemed it necessary to cite authorities in support of the specific views which I have expressed. It is enough that they must commend themselves to the rational mind. It seems to be considered in some quarters that judges should not think any more on their own account; that they should spend their lives mousing through moldy libraries in search of what other judges in a less enlightened age have said, not even upon the immediate question in hand, but upon some matter more or less distantly related. It is thought to be presumption to let one's own bucket down into

the living well of reason, instead of being content to lick up from the muddy, trampled earth around it the green and stagnant leak age of the past. And so the science of law, which was once deemed the perfection of human reason, is being left behind by every other science. The last word has not yet been said on any subject. Judgment for nominal damages, without costs and without injunction.

Judgment accordingly.